UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No.:_____

| | |
|---|---|
| Jessica Michaels,<br><br>      Plaintiff,<br><br>  vs.<br><br>Ally Financial Inc. *d/b/a* Ally Financial, MVConnect, LLC *d/b/a* MVTrac, and Minnesota Repossessors, Inc.<br><br>      Defendants. | **COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

1. Plaintiff Jessica Michaels alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"); Article 9 of the Minnesota Uniform Commercial Code (UCC), Minn. Stat. § 336.9-609; and Minnesota Common Law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1367. Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because: Plaintiff resides in this Judicial District; Defendants transact business in this Judicial District; Defendant Minnesota Repossessors, Inc. is located in this Judicial District; and the events or conduct giving rise to the claims occurred in this Judicial District.

## PARTIES

3. Plaintiff Jessica Michaels ("Plaintiff") is a natural person, and citizen of the State of Minnesota.

4. Defendant Ally Financial Inc. *d/b/a* Ally Financial (hereinafter "Ally") is a Michigan corporation with its principal place of business is located at 200 Renaissance Center, Detroit, Michigan, 48265. Ally is registered to do business in Minnesota under the assumed name Ally Financial. CT Corporation System, Inc. is the registered agent authorized to accept service on behalf of Ally at 100 South Fifth Street, Suite 1075, Minneapolis, MN 55402.

5. Defendant MVConnect, LLC d/b/a MVTrac ("MV") is an Illinois limited liability company with its principal place of business located at 260 E. Helen Rd., Palatine, IL 60067. CT Corporation System is the registered agent authorized to accept service on behalf of Defendant MV at 208 So. Lasalle St., Suite 814, Chicago, IL 60604. Upon information and belief, MV does business as MVTrac, MVRecovery, MVIntel, and/or IIA.

6. MV offers nationwide recovery management services to financial institutions and repossession vendors, including repossession forwarding and asset location services.

7. MV uses independent repossession agents across the country to locate and recover consumer automobiles.

8. The principal purpose of MV's business is to provide repossession services and conduct vehicle repossession for automobile finance companies – i.e., the enforcement of security interests for auto lenders.

9. MV regularly enforces or attempts to enforce security interests for other parties.

10. Defendant Minnesota Repossessors, Inc. ("MRI") is a Minnesota corporation with its principal place of business located at 10939 89th Ave N, Maple Grove, Minnesota 55369. Patrick H. Elliot is the registered agent authorized to accept service on behalf of Defendant MRI. Upon information and belief, Mr. Elliot's offices are located at 2409 W. 66th St. Minneapolis, MN 55423. Upon information and belief, MRI does business as MRI, Repossessors, Inc., and Repo Inc.

11. MRI is a full service collateral recovery company that specializes in auto repossessions.

12. Much of MRI's repossession assignments are done through MRI's proprietary communications system, PRIOS.

13. PRIOS is an acronym for Professional Repossessors Interactive Operating System. PRIOS is used to streamline the entire recovery process by improving communication, increasing productivity and reducing waste and redundancies.

14. MRI is engaged in a business, the principal purpose of which is the enforcement of security interests.

15. MRI regularly enforces or attempts to enforce security interests for other parties.

16. Defendants MV and MRI regularly use the mail, roads, and telephone in connection with the enforcement of security interests by operating tow truck vehicles and transporting repossessed vehicles; engaging in telephone conversations with consumers regarding repossession and repossession fees; telephone calls with creditors and auction

3

companies; and mailing correspondence, invoices, statements, notices, and reports to creditors and auction companies.

17. Federal court records indicate that MRI has repeatedly been sued under the FDCPA as a debt collector in United States District Courts across the country. *See PACER Case Locator*, (Nov. 29, 2017, 12:07 p.m.), https://pcl.uscourts.gov/search (search term "Repossessors").

18. For purposes of 15 U.S.C. § 1692f(6), Defendant MV and MRI are "debt collectors" as defined in the FDCPA. *See* 15 U.S.C. § 1692a(6).

19. Defendants MV and MRI were acting as debt collectors with respect to Plaintiff and the security interests referenced in this Complaint.

## FACTUAL ALLEGATIONS

**THE 2015 DODGE DURANGO**

20. Sometime prior to November 2018, an unknown, third-party consumer purchased a 2015 Dodge Durango (the "Vehicle").

21. In connection with the purchase of the Vehicle, the third-party consumer entered into a retail installment contract with Ally (hereinafter "Ally Agreement").

22. Under the Ally Agreement, Ally was granted a security interest in the Vehicle to secure repayment of a loan and/or other obligations under the Ally Agreement.

23. The Ally Agreement was a "security agreement" under Minn. Stat. § 336.9-102(a)(74) because it provided for a security interest to Ally. Therefore, Ally is a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

4

24. The Vehicle is a "consumer good" under Minn. Stat. § 336.9-102(a)(23) because it was a vehicle for an individual and for personal purposes.

25. Because the obligations under the Ally Agreement were incurred for personal, family or household purposes, the Ally Agreement was a "consumer goods transaction" under Minn. Stat. § 336.9-102(a)(24).

26. Upon information and belief, on or around August or September 2018, Merit Chevrolet (hereinafter "Merit") purchased the Vehicle for resale.

27. On or around August or September 2018, Ally issued a lien release to Merit in connection with the Vehicle.

28. Merit was granted free and clear title to the Vehicle.

29. In November 2018, Plaintiff purchased the Vehicle from Merit.

30. Plaintiff was provided title and registration to the Vehicle.

31. The Vehicle is registered in Plaintiff's name.

32. In connection with purchasing the Vehicle, Plaintiff entered into a retail installment contract.

33. The retail installment contract was contemporaneously assigned to GM Financial (the "GM Agreement").

34. Under the terms of the GM Agreement: (a) Plaintiff obtained a loan from GM Financial to finance the purchase of the Vehicle; (b) Plaintiff granted GM a security interest in the Vehicle to secure repayment of the loan GM issued to Plaintiff; (c) Plaintiff was required to make 72 regular monthly installment payments to GM Financial; (d) the

5

principal amount of the obligation is $23,139.78; and (e) there is a credit service charge for the loan.

35.     The Vehicle is a "consumer good" under Minn. Stat. § 336.9-102(a)(23) because Plaintiff used and bought the Vehicle for personal, family, or household purposes.

36.     The GM Agreement is a "security agreement" under Minn. Stat. § 336.9-102(a)(74) because it provides for a security interest to GM Financial. Therefore, GM Financial is a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

37.     Because Plaintiff's obligations under the GM Agreement were incurred for personal, family or household purposes: (a) Plaintiff is "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA; (b) Plaintiff is a "consumer debtor" as that term is defined by Minn. Stat. § 336.9-102(a)(22); (c) the GM Agreement is a "consumer goods transaction" under Minn. Stat. § 336.9; and (d) Plaintiff's obligation under the GM Agreement is a "debt" as defined by 15 U.S.C. § 1692a(5).

38.     At all relevant times, Plaintiff's obligations under the GM Agreement were in good standing.

39.     At all relevant times, Plaintiff was up to date and current with all her regular monthly payments under the GM Agreement.

40.     At all relevant times, Plaintiff was never in default under the GM Agreement.

6

**DEFENDANTS' UNLAWFUL REPOSSESSION**

41. Sometime prior to January 10, 2019, Ally sought the assistance of MV to acquire the Vehicle through self-help repossession.

42. Thereafter, MV hired, engaged, and/or sought the assistance of MRI to perform the actual self-help repossession on behalf of either MV or Ally, or both MV and Ally.

43. On January 10, 2019, Ally, MV, or MRI informed the police that it would be repossessing Plaintiff's Vehicle and that Defendants were lawfully able to possess Plaintiff's Vehicle.

44. On January 10, 2019, MRI, by and through one of its repossession agents, arrived at Plaintiff's house with a tow truck to repossess Plaintiff's Vehicle.

45. On January 10, 2019, MRI, by and through one of its repossession agents, backed its tow truck up to Plaintiff's Vehicle, hooked the Vehicle to the tow truck, and lifted the Vehicle off of the ground.

46. Once a repossession agent has gained control over the collateral, the repossession has been completed. *See James v. Ford Motor Credit Co.*, 842 F. Supp. 1202, 1209 (D. Minn. 1994), *aff'd*, 47 F.3d 961 (8th Cir. 1995) *accord Thompson v. First State Bank of Fertile*, 709 N.W.2d 307, 311 (Minn. App. 2006).

47. On or around January 10, 2019, MRI, by and through one of its repossession agents, repossessed Plaintiff's Vehicle at MV's request or Ally's request, or at the request of both MV and Ally.

7

48. On January 10, 2019, Plaintiff noticed a person walking by her house whom she believed to be the mail carrier. Thereafter, Plaintiff went outside to check her mail.

49. Plaintiff noticed that MRI had her Vehicle hooked up to its tow truck and had repossessed the Vehicle.

50. Plaintiff was shocked and surprised by Defendants' conduct because she was not in default under her GM Agreement.

51. Plaintiff immediately informed MRI that there was no reason for MRI to be taking her Vehicle.

52. MRI told Plaintiff that she needed to contact her lender.

53. Plaintiff ordered MRI to release her Vehicle.

54. Plaintiff contacted her parents because she was worried, nervous, agitated, and confused. Plaintiff informed her parents of the repossession.

55. Plaintiff's neighbor witnessed the repossession, heard the commotion, and came over to Plaintiff's yard. Plaintiff's neighbor told MRI to release the Vehicle.

56. Plaintiff's father arrived at the scene and ordered MRI to release the Vehicle.

57. Plaintiff contacted GM Financial on her cellular phone to inquire about the repossession.

58. Plaintiff had GM Financial on speaker phone in front of MRI, and MRI could hear Plaintiff's conversation with GM Financial.

59. GM Financial confirmed that Plaintiff was not in default under her GM Agreement.

60. GM Financial confirmed that there were no outstanding repossession orders in connection with Plaintiff's Vehicle.

61. MRI confirmed that it was acting on a repossession order from Ally and not from GM Financial.

62. Plaintiff informed MRI that she does not have a loan with Ally, that she has a loan with GM Financial, and that MRI could not take her Vehicle.

63. MRI informed Plaintiff that Ally was responsible for the repossession.

64. Plaintiff was confused, scared, nervous, anxious, angry, agitated, upset, embarrassed, humiliated, and annoyed.

65. Plaintiff could not understand why her Vehicle had been repossessed when she had made all of her regular monthly payments on time and was current on all her payments under the GM Agreement.

66. Plaintiff demanded paperwork from MRI, and MRI refused to provide Plaintiff with any information.

67. Plaintiff contacted the police to prevent Defendants from taking her Vehicle away.

68. Plaintiff spent hours on the phone attempting to make sense out of the repossession of her Vehicle.

69. Plaintiff contacted GM Financial, MV, Ally, MRI, Merit, and the Merit sales rep regarding the wrongful repossession.

70. Defendants gave Plaintiff conflicting answers, refused to provide answers, refused to admit wrongdoing, and bounced Plaintiff around to multiple representatives.

71. Ally told Plaintiff to call MV, MV told Plaintiff to call MRI, and MRI told Plaintiff to call Ally.

72. Eventually, MRI released the Vehicle to Plaintiff after having refused to immediately release the Vehicle.

73. After the repossession, Plaintiff continued to contact Defendants, Merit, and GM Financial to resolve the wrongful repossession.

74. After the repossession, Plaintiff continued to contact Defendants to ensure that there was no repossession in connection with her Vehicle.

75. Defendants failed or refused to provide Plaintiff with any such confirmation.

76. Plaintiff became further confused, scared, nervous, anxious, angry, agitated, upset, embarrassed, humiliated, and annoyed.

77. Plaintiff was able to confirm that Ally had previously sent a lien release to GM or Merit in connection with the Ally Agreement.

78. After Plaintiff retained a consumer protection attorney, Defendants finally confirmed that it wrongfully repossessed the Vehicle.

79. Defendants illegally and wrongfully repossessed Plaintiff's Vehicle.

80. MRI actions on January 10, 2019, as described above, were taken on behalf of MV or Ally, or both MV and Ally.

81. At all times, MV was acting as an agent for Ally and/or MRI, MV was acting on behalf of Ally and/or MRI, and MV was acting at the request and instruction of MRI and/or Ally.

82. At all times, MRI was acting as an agent for Ally and/or MV, MRI was acting on behalf of Ally and/or MV, and MRI was acting at the request and instruction of MV and/or Ally.

83. Defendants entered into a contractual relationship wherein MRI and/or MV were to locate and repossess Plaintiff's Vehicle on behalf of Ally. In exchange, Ally was to pay MRI and/or MV for the services it provided to Ally.

84. MRI represented to Plaintiff and to third-parties that it was acting on behalf of Ally and MV.

85. MV represented to Plaintiff and to third-parties that it was acting on behalf of Ally.

86. Ally knew or reasonably should have known that MRI had been sued in the past for wrongful repossession and violations of the FDCPA.

87. Defendants actions were ratified and/or authorized because: (a) any Defendant could have prevented the repossession by performing even a cursory review of the data, as opposed to blankly relying on unreliable and inaccurate electronica date; (b) Defendants repossessed the Vehicle; (c) Defendants failed to immediately release the Vehicle; (c) Defendants bounced Plaintiff around to several agents; and (d) Defendants failed to confirm with Plaintiff that the repossession was a mistake until after Plaintiff had retained legal counsel.

**DAMAGE, HARM, AND INJURIES TO PLAINTIFF**

88. Plaintiff has suffered actual damages, tangible injuries, and intangible injuries as a result of Defendants' unlawful and wrongful collection efforts.

89. It was highly offensive, intrusive, and invasive for Defendants to contact third-parties to inform them that Plaintiff's Vehicle may be lawfully repossessed.

90. It was highly offensive, intrusive, and invasive for Defendants to repossess Plaintiff's Vehicle, wherein the wrongful repossession was visible to Plaintiff's neighbors, family, and friends.

91. Defendants caused an intrusion upon Plaintiff's privacy and seclusion.

92. Defendants' conduct caused Plaintiff significant emotional distress, including anger, inconvenience, confusion, embarrassment, fear, annoyance, aggravation, nuisance, anxiety, and agitation.

93. For weeks after the repossession, Plaintiff feared that Defendants were going to repossess her Vehicle. As a result, Plaintiff refrained from using the Vehicle, and sometimes refrained from leaving her house.

94. Plaintiff became paranoid that people were outside of her house looking at or searching for her Vehicle in an effort to repossess her Vehicle.

95. Plaintiff could not understand why Defendants repossessed her Vehicle.

96. Plaintiff had to waste time through multiple phone calls to Defendants, review of her account, review of her financial accounts, and multiple calls and meetings with her attorneys.

97. Defendants stole and converted Plaintiff's property.

98. Defendants' conduct interfered with, interrupted, invaded, and deprived Plaintiff's use, possession, and enjoyment of her personal property, specifically her Vehicle.

99. All of Plaintiff's above-referenced injuries – both tangible and intangible – are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Minnesota.

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(MV and MRI)

100. Plaintiff restates and re-alleges the preceding allegations of this Complaint.

101. Defendants MV and MRI used unfair or unconscionable means to enforce a security interest against Plaintiff by taking or threatening to take certain nonjudicial action to effect dispossession of Plaintiff's property when Defendants had no present right to possession of the property which it claimed as collateral through an enforceable security interest.

102. Specifically, MV and MRI engaged in a self-help repossession of Plaintiff's Vehicle without the present legal right to possess and/or take Plaintiff's Vehicle.

103. Defendants did not have the legal right to possess Plaintiff's Vehicle because Plaintiff owned the Vehicle, Plaintiff did not have any agreement with Ally, Plaintiff had loan with GM Financial, and Plaintiff was not in default under the GM Agreement. As a result, MV's and MRI's conduct violated 15 U.S.C. §§ 1692f and 1692f(6).

104. As a result of MV's and MRI's violations of the FDCPA, Plaintiff is entitled to actual damages, statutory damages of up to $1,000.00, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(1)-(3).

## COUNT II
## VIOLATIONS OF MINN. STAT. § 336.9-609
## UNLAWFUL REPOSSESSION
## (ALL DEFENDANTS)

105. Plaintiff restates and re-alleges the preceding allegations of this Complaint.

106. At all relevant times, Defendants had no present legal right to possess Plaintiff's Vehicle under Minn. Stat. § 336.9-609.

107. On or about January 10, 2019, Defendants conducted a self-help repossession of Plaintiff's Vehicle without a present right to possession of Plaintiff's Vehicle.

108. Defendants breached the peace during the repossession by unlawfully taking possession of Plaintiff's Vehicle.

109. Defendants' self-help repossession of Plaintiff's Vehicle was conducted without compliance with Minnesota law (*i.e., in violation of Minn. Stat. § 336.9-609*).

110. As a result of Defendants' violations of Minn. Stat. § 336.9-609 and pursuant to Minn. Stat. § 336.9-625, Plaintiff is entitled to statutory and/or actual damages.

## COUNT III
## CONVERSION AND/OR TRESPASS TO CHATTEL
## (ALL DEFENDANTS)

111. Plaintiff restates and re-alleges the preceding allegations of this Complaint.

14

112. At all relevant times, Plaintiff was entitled to the exclusive property interest of her Vehicle.

113. At all relevant times, Plaintiff was entitled to the exclusive use, possession and enjoyment of her property – specifically, her Vehicle.

114. Plaintiff's Vehicle is movable and/or transferable property.

115. Plaintiff's Vehicle is a chattel.

116. At the time of the repossession, Defendants did not have the present right to use, take possession of, or move Plaintiff's property – in this case, her Vehicle.

117. By unlawfully repossessing Plaintiff's Vehicle, Defendants:

   a. Intentionally deprived Plaintiff of the use, possession, and enjoyment of her property, without a claim of right;

   b. Intentionally invaded and interfered with Plaintiff's use, possession, and enjoyment of her property, without a claim of right;

   c. Took control and possession of Plaintiff's Vehicle without Plaintiff's consent;

   d. Deprived Plaintiff of the use of her Vehicle; and

   e. Substantially intermeddled with Plaintiffs' property, without a claim of right.

118. Defendants converted Plaintiff's property for their own use and benefit by unlawfully repossessing Plaintiff's Vehicle.

119. Defendants' conduct was done intentionally, unreasonably and without justification.

120. As a direct and proximate result of Defendants' conversion and/or trespass to chattel, Plaintiff has been deprived of the use and possession of her Vehicle and damaged in an amount to be determined at trial.

### COUNT IV
### INVASION OF PRIVACY
### (ALL DEFENDANTS)

121. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

122. Congress explicitly recognized a person's right to privacy in financial and collection matters in passing the FDCPA and the Gramm-Leach Bliley Act. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute . . . to invasions of individual privacy."); *see also* 15 U.S.C. § 6801(a).

123. Defendants intentionally and/or negligently interfered with the solitude, seclusion, and/or private concerns or affairs of Plaintiff by wrongfully repossessing her Vehicle, publicly repossessing her Vehicle, and informing third parties that Plaintiff's Vehicle could be lawfully repossessed as a result of non-payment.

124. Plaintiff had a reasonable expectation of privacy in her solitude, seclusion, private concerns, private affairs, and financial information.

125. Defendants' above-described conduct resulted in multiple intrusions and invasions of Plaintiff's privacy.

126. The intrusions and invasions of Plaintiff's privacy occurred in a way that would be highly offensive to a reasonable person in Plaintiff's position.

127. Defendants intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting any alleged

debt or secured interest, thereby invading and intruding upon Plaintiff's rights to privacy.

128. As a result of Defendants' conduct, Defendants invaded Plaintiff's privacy and right to financial privacy.

129. As a direct and proximate result of Defendants' invasion of privacy, Plaintiff has suffered damages in an amount to be determined at trial.

## JURY DEMAND

130. Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff Jessica Michaels demands a trial by jury and prays for judgment against Defendants Ally Financial Inc. *d/b/a* Ally Financial, MVConnect, LLC *d/b/a* MVTrac, and Minnesota Repossessors, Inc. as follows:

1. Awarding judgment against Defendants in an amount to be determined at trial;

2. Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against MRI and MV;

3. Awarding Plaintiff actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

4. Awarding Plaintiff damages against Defendants caused by Defendants' conversion of Plaintiff's property. Alternatively, awarding Plaintiff damages against Defendants caused by Defendants' trespass to chattel;

5. Awarding Plaintiff damages against Defendants caused by Defendants' invasion of privacy;

6. Awarding Plaintiff any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

7. Awarding Plaintiff such other and further relief as the Court deems proper, just and equitable.

17

**TARSHISH CODY, PLC**

Dated:  January 8, 2020      By:    *s/ Adam R. Strauss*
Adam R. Strauss (#0390942)
ars@attorneysinmn.com
6337 Penn Avenue South
Minneapolis, Minnesota 55423
Telephone: (952) 361-5556
Facsimile: (952) 361-5559
**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Jessica Michaels verifies, certifies, and declares under penalty of perjury, as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this Complaint is not interposed for any improper purpose, such as to harass any Defendant, cause unnecessary delay to any Defendant, or create a needless increase in the cost of litigation to any Defendant, named in the Complaint.
5. I have filed this Complaint in good faith and solely for the purposes set forth in it.
6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON** ___Jan___ , ___8___ , ___2020___
                      Month      Day      Year

_____
**Jessica Michaels**